UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TERRELL L. SILVER, | ) | CASE NO.: 1:23-cv-1242 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| KEVIN O'DONNELL, *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

Plaintiff Terrell L. Silver, then a prisoner in the Cuyahoga County Corrections Center, filed a *pro se* complaint alleging multiple civil rights violations. Defendants Kevin O'Donnell, Ronda Gibson, Cuyahoga County Corrections Center, and Cuyahoga County (collectively "Defendants") moved to dismiss the entirety of Plaintiff's amended complaint for failure to state a claim. (Doc. 26.) For the reasons herein, Defendants' motion to dismiss is GRANTED.

I.     **BACKGROUND**

    A.  **Factual Allegations**[1]

Plaintiff's complaint allegations largely focus on events that occurred at the Cuyahoga County Correctional Center ("CCCC") on April 15, 2023. (Doc. 1 at 4-5.)[2] Plaintiff was housed in unit 10-B ("10-B")—a segregated section of CCCC. (*Id.* at 16.) Plaintiff's segregation was scheduled to end on April 14, 2023, but he was not removed from segregation that day. (*Id.* at

---

[1] The factual allegations in Plaintiff's complaint are assumed to be true and construed in Plaintiff's favor. *See Strayhorn v. Wyeth Pharms., Inc.*, 737 F.3d 378, 387 (6th Cir. 2013); *Hall v. Callahan*, 727 F.3d 450, 453 (6th Cir. 2013) (quoting *Ziegler v. IBP Hog Mkts., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)).

[2] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

5.)

The next day, April 15, 2023, Plaintiff exited his cell as his medications were being delivered. (*Id.*) Plaintiff refused to return to his cell and demanded an explanation for his continued detention "in segregation without any disciplinary reason to do so." (*Id.* at 5, 12.) Plaintiff picked up a broomstick. (*Id.* at 12.) Corrections officers ordered Plaintiff to drop the broomstick and return to his cell. These commands were given multiple times. Plaintiff refused to comply each time. (*Id.*) It was not until officers utilized pepper balls that Plaintiff complied. (*Id.*) According to Plaintiff, he did not obey their commands because officers had not explained "why [he was] still being held in segregation when [his] lockup days are complete." (*Id.*)

Following this incident, Plaintiff was placed in an emergency restraint chair for approximately two hours. (*Id.*) Plaintiff was then taken to another section of CCCC, unit 4-J ("4-J"). (*Id.*) According to Plaintiff, 4-J is "an area that temporarily hold[s] inmates for court proceedings" and is "not designed to house inmates" as it does not contain cameras, telephones, or bunks. (*Id.*) While in 4-J, Plaintiff was forced to sleep on the ground in unsanitary conditions and lacked access to potable water. (*Id.* at 12-13, 20.)

Plaintiff was previously "diagnosed with antisocial personality disorder, depression, [and] anxiety" and requires medication for epilepsy. (*Id.* at 13.) On April 15, 2023, due to his "fear of safety, confusion and worry as to why [he] was being housed" in 4-J, Plaintiff panicked, which triggered his anxiety and caused him to have a seizure. (*Id.*) Because access to 4-J was limited, corrections officers could not readily access medical equipment and Plaintiff was transported to the infirmary by emergency restraint chair. (*Id.* at 13-14.) The emergency restraint chair "caused sprain, inflammation and strain" on Plaintiff's neck. (*Id.* at 14.) While in

the infirmary, Plaintiff stopped breathing and required sedation. (*Id.*) Plaintiff was taken to the emergency room for further treatment. (*Id.*)

After treatment, Plaintiff was again placed in 4-J. (*Id.*) Plaintiff was not informed that his behavior could result in placement in "an unauthorized segregated area." (*Id.*) Plaintiff contends that while housed in 4-J, he was denied visits from his attorney and clergy, phone calls to his attorney, adequate food, adequate light, ventilation, temperature control, sanitation, medical care, access to hot showers, and access to hygiene items. (*Id.* at 14-15.)

On April 21, 2023, Plaintiff returned to 10-B. (*Id.* at 13.) Plaintiff filed a grievance for cruel and unusual punishment, violation of due process, and negligence. (*Id.* at 7.) This grievance was denied. (*Id.*) Plaintiff did not appeal the grievance because, as he explains, a "conflict of interest" led him to believe he "wasn't going to get any adequate results." (*Id.*)

### B. Procedural History

On June 26, 2023, Plaintiff filed a complaint against Defendant Kevin O'Donnell (CCCC's assistant warden), Defendant Ronda Gibson (CCCC's jail administrator), and CCCC itself. (Doc. 1.) Plaintiff alleged that Defendants violated his rights under the First, Fifth, Sixth, Eighth and Fourteenth Amendments, the Ohio Administrative Code, and Title 10. (*See id.* at 3.) Plaintiff seeks $2,000,000 in punitive damages for "mental anguish, personal injury, emotional distress, cruel and unusual punishment, pain and suffering, negligence" and violations of his constitutional rights. (*Id.* at 5.) This case was referred to Magistrate Judge Armstrong for pretrial supervision, save any resolution of dispositive motions. (Doc. 6.)

On October 17, 2023, Defendants moved to dismiss for failure to state a claim. (Doc. 10.) On October 30, 2023, Plaintiff moved to amend his complaint. (Doc. 11.) Plaintiff's motion did not include a proposed amended complaint or a description of his anticipated

amendments. (*See id.*) On November 8, 2023, Defendants opposed Plaintiff's motion to amend his complaint, arguing that Plaintiff had not stated a basis for amending his complaint and that "it is not apparent how Plaintiff could cure the numerous deficiencies" in his pleadings. (Doc. 12 at 133.)

On November 22, 2023, Plaintiff opposed Defendants' motion to dismiss. (Doc. 13.) In his opposition, Plaintiff concurred with Defendants that CCCC is not *sui juris*, and clarified his motion to amend was to substitute Cuyahoga County for CCCC as a defendant. (*Id.* at 139.) Otherwise, Plaintiff opposed the arguments made in Defendants' motion to dismiss. (*See id.* at 139-47.) On December 6, 2023, Defendants filed a reply in support of their motion to dismiss. (Doc. 14.) And on December 18, 2023, Plaintiff filed an additional brief in opposition to Defendants' motion to dismiss. (Doc. 15.)

On March 12, 2024, the Court granted Plaintiff's motion to amend his complaint and set a deadline of April 2, 2024, for Plaintiff to file his complaint. (March 12, 2024 Non-document Orders.) The same day, Defendants' motion to dismiss was denied as moot. (*Id.*) Plaintiff filed his amended complaint on March 18, 2024. (Doc. 24.)

On April 22, 2024, Defendants moved to dismiss the amended complaint for failure to state a claim. (Doc. 26.) On May 23, 2024, Plaintiff moved for an extension of time until June 17, 2024, for file a response to the motion to dismiss (Doc. 29), which the Court granted on May 28, 2024. (May 28, 2024 Non-document Order.) On June 26, 2024, Plaintiff moved for an extension of time until June 30, 2024, to oppose Defendants' motion to dismiss. (Doc. 32.) On July 17, 2024, Magistrate Judge Armstrong noted both that Plaintiff had not filed an opposition by June 30 2024, and that Defendants had not opposed Plaintiff's request. (July 17, 2024 Non-document Order.) The Court granted Plaintiff's request for an extension and ordered that

4

Plaintiff oppose Defendants' motion to dismiss by July 31, 2024. (*Id.*) To date, Plaintiff has not opposed Defendants' motion to dismiss.

II. **LEGAL STANDARD**

When addressing a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 915 (6th Cir. 2017); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The sufficiency of the complaint is tested against the notice pleading requirement that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this standard is a liberal one, a complaint must still provide the defendant with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," to state a plausible claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Facial plausibility requires the plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[L]abels and conclusion, [or] a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Much the same, "[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Bishop v. Lucent Techs, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).

Pleadings and documents filed by *pro se* litigants are to be "liberally construed" and a "*pro se* complaint, however unartfully pleaded, must be held to a less stringent standard that formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  But such lenient treatment "has limits."  *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  In the end, a *pro se* plaintiff's complaint "must still contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Barnett v. Luttrell*, 414 Fed. App'x 784, 786 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

    III.    **ANALYSIS**

### A. Plaintiff's Failure to Oppose the Motion to Dismiss

A plaintiff's failure to respond is a waiver of any opposition to a defendant's motion to dismiss.  *See In re Hood*, 319 F.3d 755, 760 (6th Cir. 2003) (holding where a plaintiff has not raised arguments in the district court by virtue of his failure to oppose the defendants' motion to dismiss, the arguments have been waived); *see also Scott v. Tenn.*, No. 88-6095, 878 F.2d 382 (Table), 1989 WL 72470, at *2 (6th Cir. July 3, 1989) ("[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, the district court may deem the plaintiff to have waived opposition to the motion.").  *Pro se* litigants must "make some effort at argumentation or presentation of the facts" or be deemed to have waived opposition.  *Weatherby v. Fed. Express*, 454 Fed. App'x 480, 490 (6th Cir. 2012); *see also Notredan, L.L.C. v. Old Republic Ech. Facilitator Co.*, 531 Fed. App'x 567, 569 (6th Cir. 2013) (failure to respond to a motion to dismiss is a waiver and an independent basis on which the district court may grant the motion).

Plaintiff's failure to oppose the arguments in the motion to dismiss is an independent basis on which this Court may grant the motion and dismiss this case.  Notwithstanding, the Court will address Plaintiff's claims and the motion to dismiss.

6

### B. Plaintiff's § 1983 Claims

#### 1. Individual Defendants O'Donnell and Gibson

To plausibly state a § 1983 claim against individual defendants, a complaint must contain factual allegations of each individual defendant's specific involvement. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 66 F.3d 326 (Table), 1995 WL 559381, at *1 (6th Cir. Sept. 20, 1995). Merely having general supervisory authority as the assistant warden, like Defendant O'Donnell, or the jail administrator, like Defendant Gibson, is insufficient. *See Knott v. Sullivan*, 418 F.3d 561, 574 (6th Cir. 2005). "Allegations of respondeat superior do not sustain a § 1983 claim against state employees in their individual capacities." *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010). A plaintiff must allege that supervisory officers "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Cardinal v. Metrish*, 564 F.3d 794, 803 (6th Cir. 2009)).

Plaintiff has not alleged either Defendant O'Donnell or Defendant Gibson "implicitly authorized, approved, or knowingly acquiesced" in the challenged conduct. *Colvin*, 605 F.3d at 292; *Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 490 (6th Cir. 2020) ("Each defendant must be 'personally involved' in the unconstitutional action."). As such, Plaintiff's § 1983 claims against Defendants O'Donnell and Gibson must be dismissed.[3]

---

[3] Defendants O'Donnell and Gibson also assert qualified immunity. (Doc. 26 at 240-41.) Plaintiff has stated no opposition. Notwithstanding, because all claims against Defendants O'Donnell and Gibson are dismissed, the Court need not address their qualified immunity defense.

### 2. Defendant Cuyahoga County

A local government, like Cuyahoga County, is subject to § 1983 liability only for its own conduct, *i.e.*, "when a county 'policy' or 'custom' caused the plaintiff's [constitutional] injury and a 'direct causal link' existed between the policy and purported [rights violation]." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 946 (6th Cir. 2010); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978). In order to state such a claim, a plaintiff must "(1) identify the [government] policy or custom, (2) connect the policy to the [government entity], and (3) show that [his] particular injur[ies] w[ere] incurred due to execution of that policy." *Brawner v. Scott Cnty.*, 14 F.4th 585, 598 (6th Cir. 2021) (quoting *Morgan v. Fairfield Cnty.*, 903 F.3d 553, 566 (6th Cir. 2018)).

Once a plaintiff establishes the requisite causal connection, there are four ways to demonstrate that a policy, practice or custom could allow for municipal liability: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *Jackson v. City of Cleveland*, 622 F. Supp. 3d 636, 641 (N.D. Ohio 2022) (citing *Lipman v. Budish*, 874 F.3d 726, 747 (6th Cir. 2020)).

Plaintiff has not alleged a custom or policy of Cuyahoga County, much less one connected to the conditions or events of which he complains. Plaintiff has likewise failed to allege facts sufficient to invoke even one of the four theories of municipal liability. Accordingly, Plaintiff's claims against Cuyahoga County are dismissed.

### 3. Defendant CCCC

Plaintiff's motion to amend his complaint and his opposition to Defendants' motion to dismiss concede that Plaintiff's claims against CCCC should be dismissed. (Doc. 13 at 139 ("Plaintiff concurs with the Defendants, which is why on 10/30/23, Plaintiff ask[ed] this court for permission to amend [the] complaint for the sole purpose of correcting the misapplied listed Defendant from [CCCC] to Cuyahoga County."); *see also* Doc. 11 (requesting leave to amend complaint); Doc. 26 at 223 n. 1 (citing *Cobbeldick v. Cuyahoga Cnty. Corr. Ctr.*, No. 1:21-cv-1159, 2021 WL 4951759, at *2 (N.D. Ohio Oct. 25, 2021) ("Cuyahoga County Corrections Center is not a proper Defendant [because] [i]t is not *sui juris*[.]").) Accordingly, Plaintiff's claims against CCCC are dismissed.

### C. Plaintiff's Remaining Claims

Plaintiff also alleges violations of 10 U.S.C. § 905, Article 105, 19 U.S.C. § 1592, and Ohio Administrative Code Section 5120:1-8-02. (Doc. 1 at 3, 15.) To him, "Assistant Warden Mr. Kevin O'Donnell and Jail Administrator Ms. Ronda Gibson[] together were committing forgery and violating Ohio Administration Code 5120:1-08-02 – Classification by making it seem that [Plaintiff] was . . . in unit 10-B . . . when in actuality [he] was physically being detained in an unauthorized area." (*Id.* at 15.) Plaintiff alleges that at all times, his classification card stated he was located in 10-B, not 4-J. (*Id.*) The discrepancy between his classification card and his actual location caused delays in his court proceedings, medical treatment, and meals. (*Id.* at 15-16, 17, 19.) Plaintiff further alleges, without more, that inmates' "[r]ights and privileges are reviewed twice weekly by the custody status review committee" where "Assistant

9

Warden Kevin O'Donnell and Jail Administrator Ms. Ronda Gibson play a very specific and important role." (*Id.* at 20.)

Title 10 of the United States Code pertains to the United States Armed Forces and Department of Defense. Section 905, Article 105 of Title 10 defines a forgery offense under military law. 10 U.S.C. § 905, Art. 105. Title 19 of the United States Code is the codification of the Tariff Act of 1930. Section 1592 conveys enforcement authority to the U.S. Customs Service to address any person's failure to properly declare commercial goods. These statutes have no applicability to Plaintiff's claims.

Rule 5120: 1-8-02 provides guidance to full-service jails regarding their inmate classification systems. Among other things, Rule 5120:1-8-02 requires that each jail has a written system "that specifies the criteria and procedures for determining and changing the classification of inmates to determine the level of custody required, special needs, housing assignment and participation in programming and written policies, procedures, and practice which evidence compliance with the standards set forth in this rule." Ohio Admin. Code § 5120: 1-8-02; *see also Thompson v. Cnty. of Medina, Ohio*, 29 F.3d 238, 243 (6th Cir. 1994) (§ 5120:1-8-02 provides "only that full service jails must *consider* certain criteria"). Ohio Courts have held that the Ohio Administrative Code does not create a private cause of action. *See Moore v. Ohio Dep't of Rehab. & Corr*, 2019-Ohio-767, ¶ 8 (Ohio Ct. App. 2019) ("[P]rison regulations, including those contained in the Ohio Administrative code, 'are primarily designed to guide correction officials in prison administration rather than confer rights on inmates.'"); *see also Furr v. State Farm. Mut. Auto. Ins. Co.*, 716 N.E.2d 250, 257 (Ohio. Ct. App. 1998).

Plaintiff's remaining claims are dismissed for failure to state a claim.

## IV. CONCLUSION

For the reasons above, Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 26) is GRANTED as to all Defendants.  This case is DISMISSED in its entirety.

**IT IS SO ORDERED.**

Date: November 21, 2024

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE